UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JOHN INTERMOR,

                                Plaintiff,

         -against-     (S.I.)

THE INCORPORATED VILLAGE OF MALVERNE,
the BOARD OF TRUSTEES OF THE INCORPORATED
VILLAGE OF MALVERNE, POLICE CHIEF RAYMOND
M. GARRIGAN in his individual capacity, GLEN JACOBSEN
in his individual capacity, MAYOR ANTHONY J.
PANZARELLA in his individual capacity, JOHN RUSSO in his
individual capacity, DONALD PUPKE in his individual capacity,
JOSEPH HENNESSEY in his individual capacity and
PATRICIA McDONALD in her individual capacity,

                                Defendants.
-----------------------------------------------------------------------X

Civil No.

**FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 10 2003 ★
LONG ISLAND OFFICE**

COMPLAINT

CV 03 5164

PLAINTIFF
DEMANDS
TRIAL BY
JURY

SPATT, J.

ORENSTEIN, M.

      Plaintiff, JOHN INTERMOR, by his attorneys, BLODNICK, GORDON, FLETCHER &

SIBELL, P.C., complaining of the defendants, respectfully alleges as follows:

### NATURE OF THE ACTION

    1.    This is an action for civil rights violations committed by the defendants while acting in

concert and under color of New York State law, depriving the plaintiff of rights, privileges and immunities

guaranteed him by reason of the Equal Protection, Due Process and Self-Incrimination Clauses of the Fifth

and Fourteenth Amendments to the United States Constitution, which is actionable pursuant to 42 U.S.C.

§ 1983.

### JURISDICTION

    2.    This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

1

## VENUE

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff is a citizen of the United States, was a resident of the State of New York, County of Nassau at the times herein complained of and now resides in the State of Florida.

5. Defendant INCORPORATED VILLAGE OF MALVERNE ("MALVERNE") is a municipal corporation and political subdivision of the County of Nassau and the State of New York, duly existing by reason of and pursuant to the laws of the State of New York, including but not limited to the Village Law of the State of New York.

6. Defendant BOARD OF TRUSTEES OF THE INCORPORATED VILLAGE OF MALVERNE (the "BOARD") is the governing body of MALVERNE, and its Village Police Department.

7. Defendant POLICE CHIEF RAYMOND M. GARRIGAN ("GARRIGAN") is a resident of the County of Nassau, the State of New York and was the Chief of Police of the MALVERNE Police Department at the time of the incidents referenced in this Complaint. Upon information and belief, GARRIGAN has subsequently retired. GARRIGAN is sued herein only in his individual capacity.

8. Defendant GLEN JACOBSEN ("JACOBSEN") is a resident of the County of Nassau, the State of New York and was a Police Lieutenant with the MALVERNE Police Department at the time of the incidents referenced in this Complaint. JACOBSEN is now the Chief of Police of the MALVERNE Police Department. JACOBSEN is sued herein only in his individual capacity.

9. Defendant MAYOR ANTHONY J. PANZARELLA ("PANZARELLA") is a resident of the County of Nassau, the State of New York and is the Mayor of MALVERNE. PANZARELLA is sued herein only in his individual capacity.

2

10. Defendant JOHN RUSSO ("RUSSO") is a resident of the County of Nassau, the State of New York and is a member of the BOARD. RUSSO is sued herein only in his individual capacity.

11. Defendant DONALD PUPKE ("PUPKE") is a resident of the County of Nassau, the State of New York, is a member of the BOARD and serves as the Police Commissioner of the Village Police Department. PUPKE is sued herein only in his individual capacity.

12. Defendant JOSEPH HENNESSEY ("HENNESSEY") is a resident of the County of Nassau, the State of New York and is a member of the BOARD. HENNESSEY is sued herein only in his individual capacity.

13. Defendant PATRICIA McDONALD ("McDONALD") is a resident of the County of Nassau, the State of New York and is a member of the BOARD. McDONALD is sued herein only in her individual capacity.

## THE FACTS

14. Plaintiff was employed as a Police Officer with the MALVERNE Village Police Department from June 1989 to March 3, 2000.

15. Plaintiff was terminated from his employment with the MALVERNE Police Village Department effective March 3, 2000, based upon a written decision of the BOARD, dated March 2, 2000, after undergoing a hearing.

16. Plaintiff's termination was ostensibly based upon the BOARD's finding that plaintiff was guilty of engaging in "criminal conduct" and "conduct unbecoming a police officer", based upon disciplinary charges (which were subsequently amended) brought by the MALVERNE Police Department at a disciplinary hearing held on January 24, 2000 and a court-ordered so-called "rehearing" held on May 8, 2002.

3

17. In the Summer of 1999, plaintiff was under a great deal of stress and anxiety due to complications with his wife's pregnancy, which occurred as a result of injuries the plaintiff's wife sustained in an automobile accident during the early stages of her pregnancy.

18. On or about July 17, 1999, plaintiff was off duty, was not in uniform and was shopping at the Home Depot store in Elmont, New York. At that time and place, as a result of the stress plaintiff was experiencing as a contributing factor, plaintiff attempted to take approximately $88.00 worth of electrical dimmer switches from the store without paying for same. Plaintiff was confronted by store security personnel and detained. Thereafter plaintiff freely admitted his acts to store security employees. Plaintiff voluntarily signed various Home Depot forms relating to this incident and agreed not to return as a customer to Home Depot. The Nassau County Police Department was called by Home Depot personnel notwithstanding and responded. Plaintiff left the Home Depot store with the responding Nassau County Police officers. Plaintiff was shortly thereafter released by the police officers, was not charged with any crime and the plaintiff returned home.

19. Upon information and belief, plaintiff was recognized at the Home Depot store by an individual who knew him as a MALVERNE police officer. Upon information and belief, this individual related this information to a member of MALVERNE's police department, one Sgt. John Arresta. Sgt. Arresta, upon information and belief, relayed this information to JACOBSEN and GARRIGAN, who then undertook to commence an "investigation" of this incident. JACOBSEN and GARRIGAN then instigated and caused the Nassau County Police Department and District Attorney of Nassau County to charge plaintiff with the crime of petit larceny, a Class A misdemeanor under the New York State Penal Law, approximately two (2) weeks after the incident.

20. Upon information and belief, a Nassau County grand jury was convened to investigate the

4

actions of the Nassau County police officers who were originally involved with the events of July 17, 1999 and the decision not to arrest or charge plaintiff. Plaintiff voluntarily testified before said grand jury proceeding. Upon information and belief, the grand jury returned no true bill of indictment. Pursuant to correspondence from the Office of the District Attorney of Nassau County it was stated:

> "Officer INTERMOR provided substantial assistance to the District Attorney's Office which included debriefings and testimony before the Grand Jury. The information and testimony which he provided helped us to resolve certain factual issues which, without his assistance, might have gone unresolved."

21. As a result of the investigation and criminal charges instigated by defendants, plaintiff was accused of petit larceny on July 30, 1999 and received an appearance ticket requiring his appearance in Nassau County District Court on August 5, 1999.

22. On August 6, 1999, GARRIGAN brought departmental charges and specifications against plaintiff. These charges and specifications were amended on August 12, 1999. GARRIGAN charged plaintiff with:

(1) Engaging in criminal conduct to wit: Arrest for shoplifting - July 17, 1999 at Home Depot, Elmont, N.Y.

(2) Conduct unbecoming a Police Officer.

    (a) Violating Oath of Office to wit: failure to obey all laws of the State of New York.

    (b) Violating the public trust to uphold law.

    (c) Failure to report an incident in the proper manner.

    (d) Causing harm to the reputation, honesty and integrity of the Police Department charged with upholding the law.

23. On August 12, 1999, the date that the above charges were brought against the plaintiff,

none of these "charges" existed anywhere in codified form within the MALVERNE Police Departmental Rules and Regulations as required by the Village Law of the State of New York. Thus, the charges were without basis or merit and not in conformity with the Village Law of the State of New York which procedurally enables such charges as the promulgating statute for Village Police Departments.

24. On August 22, 1999, plaintiff was suspended from duty as a MALVERNE police officer without pay for a period of thirty (30) days. Thereafter, plaintiff entered into a written agreement consenting to a further suspension without pay in consideration of the adjournment of the hearing during the pendency of the criminal case that was brought against him.

25. On September 29, 1999, plaintiff appeared before the Hon. Margaret C. Reilly, a Judge of the Nassau County District Court, and pled guilty to disorderly conduct, which is a violation, not a crime, under the Penal Law of the State of New York. Plaintiff paid a $250.00 fine and attended the "Stop Lift" program course as a condition of his discharge. The record of this matter was ordered sealed by Judge Reilly.

26. Upon information and belief, this matter involving plaintiff received an inordinate amount of media coverage. The aforementioned events took place at a time while the media was literally in a frenzy over the New York City police officers involved in the Amadou Diallo shooting case and those police officers' trial in Albany, New York.

27. The <u>Malverne Community Times</u>, notwithstanding Judge Reilly's sealing order, in its October 7, 1999 issue, at page 2, under the headline "Malverne Officer Cops Plea, Intermor Disciplined for Shoplifting" stated in part:

> "Intermor initially plead not guilty to misdemeanor charges of petit larceny.
> According to <u>court records</u> (emphasis added), the charges of petit
> larceny were reduced to disorderly conduct, which Intermor plead guilty

6

to and as part of the plea received a $250 fine.

Steve Scaring, Intermor's lawyer refused to comment on the case. Neither would the Nassau County District Attorney's office and ADA Ed Grilli said, 'I am unable to comment on the case. <u>The case is a sealed matter</u>.'" (emphasis added)

However, the <u>Malverne Community Times</u> article then went on to quote PANZARELLA on the plaintiff's fate with the MALVERNE Police Department:

"'Now that it has been adjudicated in the court of law, the Village Board will hold an administrative hearing,' said [Mayor] Panzarella. 'We will have to consider the facts as presented to us and make a determination what kind of action, if any, to be taken against Intermor. We can, but we do not have to take into account the criminal proceedings.'"

28. This direct quote from PANZARELLA, who presided over the first disciplinary hearing as well as the rehearing, is very noteworthy. Plaintiff's record of the proceedings in the Nassau County District Court was ordered sealed prior to the date of PANZORELLA's published commentary. As was brought out at the hearing, because of the sealing of the record, MALVERNE undertook to make an ex-parte application in Nassau County District Court to unseal the court record in furtherance of its "investigation" as a pretext for such application. The Nassau County District Court unsealed the records pursuant to the order of Judge Diamond on December 22, 1999. However, some 2-1/2 months earlier, the presiding member of MALVERNE'S Village Board, its Mayor, referenced these sealed court records in a newspaper quote!

29. Upon the first hearing, when plaintiff's attorney questioned the availability of the sealed records to PANZARELLA and the BOARD prior to December 22, 1999; PANZARELLA polled the Board to determine if any of its members had seen the court records in question. The BOARD members all stated they had not seen the documents until the "night of the hearing". The poll was concluded by

7

PANZARELLA as follows: "I have not seen them." This quote is in direct contradiction to PANZARELLA's statement of October 7, 1999.

30. That as a result of PANZARELLA'S knowledge of the sealed District Court proceedings and the public comments concerning a specific dispute and quasi-criminal proceeding that was to come before him in his adjudicatory capacity, he should have disqualified himself on the ground of prejudgment, when this subject matter was raised at the hearing.

31. That PANZARELLA, in his adjudicatory capacity based upon the above, was both interested and biased by pre-judgment and unfit to serve as the chief hearing officer in Intermor's disciplinary proceeding(s).

32. On January 24, 2000, after plaintiff had been on suspension without pay for five (5) months, the hearing on plaintiff's disciplinary charges finally came on to be heard before the BOARD.

33. At the hearing, plaintiff did not deny that he had taken the subject dimmer switches.

34. As a result of the January 24, 2000 hearing, plaintiff was found guilty of all but one (1) of the amended charges (2(c), "failure to report an incident,") and pursuant to the BOARD's decision of March 2, 2000, plaintiff was terminated as a MALVERNE police officer effective March 3, 2000, despite plaintiff having served faithfully in that capacity for over a decade.

35. On March 7, 2000, plaintiff requested a rehearing before the BOARD pursuant to Section VI, paragraphs 13 and 14 of the MALVERNE Police Department Rules and regulations, on the grounds that the sanction of termination was grossly disproportionate to the off-duty conduct of the plaintiff and that the charges themselves were defective and improper.

36. On March 17, 2000, the BOARD denied plaintiff's request for a rehearing without any explanation.

8

37. Upon receipt of the BOARD's denial, plaintiff twice renewed his request for a rehearing, first on March 23 and again on May 23, 2000, also pursuant to the Rules and Regulations of the MALVERNE Police Department and requested a response and/or explanation from the BOARD.

38. Said requests for a rehearing went unanswered by the BOARD.

39. On May 26, 2000, plaintiff herein commenced a special proceeding in New York Supreme Court, Nassau County, pursuant to CPLR Article 78, under Index Number 8448/00, seeking judicial review of the BOARD's imposition of the extreme penalty of termination and the BOARD's denial of the plaintiff's request for a rehearing, which was a violation of the MALVERNE Police Department's own Rules and Regulations.

40. The BOARD opposed the plaintiff's Article 78 proceeding and filed a motion to dismiss plaintiff's Petition. Plaintiff's Petition and the BOARD's motion came on to be heard before Justice John DiNoto of the New York State Supreme Court, County of Nassau.

41. Pursuant to the Order of Justice DiNoto, dated September 5, 2000, the Supreme Court denied the BOARD's motion to dismiss, granted the plaintiff's Petition and Ordered the BOARD to conduct a rehearing as requested by plaintiff pursuant to the procedure outlined in the Police Department Rules and Regulations.

42. Although Justice DiNoto did not address plaintiff's request for a judgment annulling, modifying and/or amending the BOARD's decision of termination in the Court's order, it was incumbent upon the BOARD to hold a fair and impartial rehearing and reconsider its decision on the extreme penalty of termination, consistent with Justice DiNoto's Order and constitutional due process standards.

43. On or about October 30, 2000, the BOARD filed a motion to reargue Justice DiNoto's earlier decision. The BOARD's motion was denied by the Court.

9

44. Rather than convene the rehearing as ordered, the BOARD chose to appeal the lower court's decision to the New York State Supreme Court, Appellate Division, Second Department.

45. By Order dated August 6, 2001, the New York State Appellate Division, Second Department unanimously affirmed the lower Court's decision and thus directed and ordered the Board to conduct a re-hearing of plaintiff's disciplinary proceeding.

46. On May 8, 2002 (nine [9] months later), the BOARD convened for the ostensible purpose of holding the rehearing as ordered by the New York State Supreme Court and complying therewith.

47. That said re-hearing was neither fair, impartial or de novo.

48. From the outset of the "rehearing," it was obvious that the BOARD had no intention of giving plaintiff any credit at all for his more than ten (10) years of faithful service, plaintiff's "owning up" to his one mistake, the trifling nature of the offense committed, the stress plaintiff was under at the time due to his wife's pregnancy complications, the plaintiff's attendance at counseling programs or any other mitigating factors.

49. The BOARD merely "went through the motions" under the pretext of a rehearing, paying no more than "lip service" to the re-hearing Order and adhered to its original decision of terminating plaintiff.

50. Specifically, at the rehearing, the BOARD entered into evidence, over objection, the entire record of the proceeding previously held before the BOARD on January 24, 2000 and the Home Depot video which had been stipulated into evidence at the first hearing.

51. The BOARD then allowed their prosecuting attorney to call the plaintiff as a witness against himself, over vehement objections by plaintiff's counsel.

52. At the so-called rehearing, by calling the plaintiff as a witness against himself, this was not

10

only a violation of the plaintiff's Fifth Amendment rights against self-incrimination but also a violation of MALVERNE's own Rules and Regulations.

53. On December 4, 2002, after seven (7) months of deliberation, the BOARD issued its decision on the rehearing. In its decision, the BOARD adhered completely to its earlier decision terminating plaintiff's employment.

54. To plaintiff's knowledge, there have been at least two (2) other similarly situated police officers employed by MALVERNE who committed offenses at least as serious as the plaintiff's, yet these officers received much more favorable and preferred treatment by the BOARD and the police department and had little, if any, punishments imposed. These other officers include, but are not limited to: MALVERNE Police Officer "John Doe" who, upon information and belief, while on duty and while in uniform, stole a carton of cigarettes from a nearby 7-11 Store. Officer "Doe" was observed on video tape stealing the cigarettes by a store security camera. However, Officer "Doe" was only penalized by the supposed loss of several days pay, a penalty, upon information and belief, that MALVERNE did not even enforce.

55. Additionally, Officer "Doe", upon information and belief, used the MALVERNE Police Department account at a nearby car wash to pay for the washing of his personal vehicle without any authorization to do so and was discovered committing this misappropriation due to the fact that the MALVERNE Police vehicle that had been charged for the wash was in maintenance and inoperative at the time. Upon information and belief, Officer "Doe" was not disciplined at all for this incident.

56. Additionally, MALVERNE Police Officer "Richard Rowe", upon information and belief, while he was on a full disability leave from his duties as a MALVERNE police officer and receiving disability benefits due to a "disabling" back injury, was observed participating in fighting a fire as a member

of the MALVERNE Volunteer Fire Department. While Officer "Rowe's" public service is commendable, the fact that he was able to perform the physically demanding tasks of fire-fighting certainly leads to the conclusion that his disability claim was at least partially questionable. Officer "Rowe", upon information and belief, was not disciplined at all for this incident. Compare Officer "Rowe's" treatment with plaintiff's, who, on September 16, 1998, was penalized by the loss of ten (10) vacation days for merely being observed purchasing a carton of milk near his home for his infant daughter while on sick leave.

57. Upon information and belief, plaintiff is the first and only member of the MALVERNE Police Department to have ever been terminated from employment for a disciplinary offence.

58. Plaintiff believes that he will be able to uncover additional examples of MALVERNE's selective treatment through the discovery process in this action.

### AS AND FOR A FIRST CLAIM UNDER 42 U.S.C. § 1983
### FOR DUE PROCESS VIOLATIONS

59. Plaintiff repeats and realleges all previous allegations as if more fully set forth herein.

60. Plaintiff had a constitutionally protected property right to his continued employment as a MALVERNE Police Officer pursuant to the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution that was violated by the arbitrary and outrageous conduct of the defendants.

61. That defendants' arbitrary and outrageous conduct included, but are not limited to, the following substantive and procedural due process violations:

    A. PANZARELLA's leakage of events pertaining to plaintiff's criminal proceedings in Nassau County District Court on or about October 7, 1999 to the <u>Malverne Community Times</u> and possibly other news media, when the records on plaintiff's criminal proceedings had previously been

ordered sealed by District Court Judge Reilly.

   B. PANZARELLA's refusal to recuse himself from participating in the plaintiff's disciplinary hearing and rehearing and from presiding at the same.

   C. GARRIGAN's preference of tailored "disciplinary charges" against plaintiff that he admittedly knew or should have known were nowhere to be found in the MALVERNE Police Department's Rules and Regulations.

   D. MALVERNE's prosecution of "disciplinary charges" against plaintiff that it knew or should have known that were nowhere to be found in the MALVERNE Police Department's Rules and Regulations.

   E. PANZARELLA, RUSSO, PUPKE, HENNESSEY and McDONALD's findings that plaintiff was "guilty" of "disciplinary charges" brought against plaintiff that they knew or should have known were nowhere to be found in the MALVERNE Police Department's Rules and Regulations.

   F. All defendants' refusal to grant plaintiff a rehearing de novo following the initial disciplinary hearing as required pursuant to the MALVERNE Police Department's Rules and Regulations.

   G. The defendants' handling and conduct of the court-ordered rehearing that was pretextual, contrived and violative of the spirit of Judge DiNoto's and the Second Department's orders.

   H. The selective, stocking, unconscionable punishment of plaintiff given past practices involving other members of MALVERNE Police Department.

62. As a direct and proximate result of the defendants' arbitrary and outrageous conduct, the plaintiff has been damaged in the amount of TEN MILLION DOLLARS ($10,000,000.00).

### AS AND FOR A SECOND CLAIM UNDER 42 U.S.C. § 1983
### FOR SELF-INCRIMINATION VIOLATIONS

63. Plaintiff repeats and realleges all previous allegations as if more fully set forth herein.

64. The BOARD's hearing of January 24, 2000 and rehearing of May 8, 2002 were quasi-criminal in nature due to the plaintiff's prospective loss of his liberty and property interests in his livelihood as a MALVERNE police officer.

65. Therefore, plaintiff had a constitutionally protected right against self-incrimination pursuant to the Fifth Amendment to the United States Constitution, which is made applicable to the States under the Fourteenth Amendment, that was violated by the defendants when the plaintiff was forced to testify against himself at the hearing of January 24, 2000 and rehearing of May 8, 2002. Indeed, if plaintiff had refused to testify, the "re-hearing" would have concluded, then and there in summary fashion.

66. As a direct and proximate result of the defendants' violation of plaintiff's rights against self-incrimination, the plaintiff has been damaged in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## AS AND FOR A THIRD CLAIM UNDER 42 U.S.C. § 1983
## FOR EQUAL PROTECTION VIOLATIONS

67. Plaintiff repeats and realleges all previous allegations as if more fully set forth herein.

68. Pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the defendants had a duty and obligation to provide all citizens located within the Village of Malverne, and particularly its municipal employees, the equal protection of its laws.

69. The plaintiff herein was selectively treated by the defendants as compared to other, similarly situated police officers and other municipal employees currently or formerly employed by MALVERNE..

70. The defendants' selective treatment of the plaintiff was motivated by impermissible considerations, i.e., the defendants' malice toward the plaintiff.

71. As a direct and proximate result of the defendants' selective enforcement against the plaintiff, the plaintiff has been damaged in the amount of TEN MILLION DOLLARS ($10,000,000.00).

### AS AND FOR A FOURTH CLAIM UNDER
### Monell v. N.Y.C. Dept. of Social Services, 436 U.S. 658, 98 S. Ct. 2018 (1978)
### FOR MUNICIPAL LIABILITY

72. Plaintiff repeats and realleges all previous allegations as if more fully set forth herein.

73. The municipal defendants, MALVERNE and the BOARD, have a custom, practice and policy of violating the constitutional rights of its employees in general and the plaintiff in particular and the municipal defendants' policy makers were aware of, ratified and/or participated in the constituional deprivations of the plaintiff and others.

74. As a direct and proximate result of the municipal defendants' unconstitutional customs, practices and policies, the plaintiff has been damaged in the amount of TEN MILLION DOLLARS ($10,000,000.00).

### AS AND FOR A FIFTH CLAIM FOR PUNITIVE DAMAGES
### AGAINST DEFENDANTS GARRIGAN, JACOBSEN, PANZARELLA, RUSSO,
### PUPKE, HENNESSEY and McDONALD

75. Plaintiff repeats and realleges all previous allegations as if more fully set forth herein.

76. The individual defendants' constitutional violations against the plaintiff were willful and wanton, entitling the plaintiff to an award of punitive damages against all individual defendants in an amount to be determined by the trier of fact.

### AS AND FOR A SIXTH CLAIM UNDER 42 U.S.C. § 1988
### FOR ATTORNEY'S FEES

77. Plaintiff repeats and realleges all previous allegations as if more fully set forth herein.

78. Should plaintiff prevail on any or all of his claims herein, the plaintiff is entitled to be

reimbursed for his actual or reasonable and customary attorney's fees expended in this matter pursuant to 42 U.S.C. § 1988 in an amount to be determined by the Court.

**WHEREFORE**, the Plaintiff demands Judgment against the defendants in the amount of:

A.   TEN MILLION DOLLARS ($10,000,000.00) on the plaintiff's First Claim;

B.   TEN MILLION DOLLARS ($10,000,000.00) on the plaintiff's Second Claim;

C.   TEN MILLION DOLLARS ($10,000,000.00) on the plaintiff's Third Claim;

**WHEREFORE**, the Plaintiff also demands Judgment against the municipal defendants MALVERNE and BOARD for:

D.   TEN MILLION DOLLARS ($10,000,000.00) on the plaintiff's Fourth Claim;

**WHEREFORE**, the Plaintiff also demands Judgment against the individual defendants GARRIGAN, JACOBSEN, PANZARELLA, RUSSO, PUPKE, HENNESSEY and McDONALD for:

E.   Punitive damages in an amount to be determined by the trier of fact;

**WHEREFORE**, the Plaintiff also demands Judgment against the defendants for:

F.   Plaintiff's actual or reasonable and customary attorney's fees expended in this matter in an amount to be determined by the Court, together with the costs, disbursements of this action and such other and further relief as to this Court seems just and proper.

Dated:   Westbury, New York
         September   30   , 2003

_____
LAWRENCE M. GORDON, ESQ. (LMG 6101)
BLODNICK, GORDON, FLETCHER & SIBELL, P.C.
Attorneys for Plaintiff
900 Merchants Concourse, Suite 400
Westbury, New York 11590
(516) 333 - 5000

G:\05013 - INTERMOR\005 - Civil Rights Action\Complaint.wpd

## **VERIFICATION**

STATE OF FLORIDA    )
                   ) ss.:
COUNTY OF           )

JOHN INTERMOR, being duly sworn, deposes and says:

I am the plaintiff in the within action. I have read the foregoing COMPLAINT and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
John Intermor

Sworn to before me on
September  30  , 2003

_____
Notary Public

Dale R. Blodgett
MY COMMISSION # DD238001 EXPIRES
August 4, 2007
BONDED THRU TROY FAIN INSURANCE, INC.